William **GRIFFIN**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 412, 2011.

Supreme Court of Delaware.

Submitted: April 18, 2012.
Decided: June 18, 2012.

---

**47.** Del.Code Ann. tit. 10, § 161(b).

Santino Ceccotti, Esquire, Office of Public Defender, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether a person may be convicted of carrying a concealed deadly weapon in his home. By statute, it is a crime to carry a concealed deadly weapon without a license. Under the Delaware Constitution, however, Delaware citizens have a constitutional right to keep and bear arms for the defense of themselves, their families, and their homes. That right is not absolute, but it does allow a person to carry a concealed deadly weapon in his home, under certain circumstances. Appellant was carrying a concealed knife in his home when he was

arrested. He claims that when the police asked about his knife, appellant told them it was hidden in his pants. If a jury were to accept appellant's version of the events surrounding his arrest, he would not be subject to prosecution for carrying a concealed deadly weapon. Because the jury was not properly instructed, we must remand for a new trial on that charge alone.

## Factual and Procedural Background

At about midnight on April 27, 2010, the Wilmington Police responded to a report of a domestic dispute at the home that William Griffin had been sharing with his girlfriend. The two were splitting up, and Griffin was packing and unpacking boxes. He had a steak knife that he was using to open the boxes. When the police arrived, Griffin was in the basement with the lights out. According to Griffin, he was listening to music, drinking a beer, and thinking about what was happening with his relationship.

When the four police officers entered the house, they spoke to Griffin's girlfriend, who told them that Griffin was in the basement, had been drinking, and might have a knife. One or more of the officers called down to Griffin and told him to come upstairs. Griffin responded by yelling at the officers, asking what they were doing in his house. There is some dispute as to how long it took Griffin to obey the officers, but, within a few minutes, he walked upstairs, holding an open beer can in one hand.

As soon as Griffin reached the main floor, the police took the beer can out of his hand, turned him around, and cuffed his hands behind his back. Griffin was angry and he admits that he was "mouthy" with the police and his girlfriend. While Griffin was being removed from the house, he kicked over and broke a lamp. Once outside, there was a scuffle during which Griffin bit Detective Samuel Smith's arm. The police then knocked Griffin to the ground, and he suffered head injuries. The police transported Griffin to the hospital. They discovered the knife when Griffin changed into a hospital gown.

The testimony about Griffin's knife is contradictory. According to the police, as soon as Griffin came upstairs, they asked Griffin whether he had a knife. Griffin told them it was in the basement, but the police did not find it there. The police also did not find the knife during the pat down incident to Griffin's arrest. Griffin, by contrast, testified that he was asked about the knife while being handcuffed and that he told the police he had a knife in his pants. Griffin even shook his leg to show them. But Griffin testified that the police never completed the pat down, and never looked under the clothes on his leg, because they were too busy dragging him out of the house.

Griffin was charged with resisting arrest, second degree assault, carrying a concealed deadly weapon (CCDW), and two counts of criminal mischief. The State *nolle prossed* one count of criminal mischief and the jury found Griffin not guilty of assault. Griffin was convicted on the other charges, and he was sentenced to one year at Level V suspended for one year at Level II on the CCDW charge. This appeal followed.

## Discussion

The issue on appeal is whether the CCDW statute is unconstitutional as applied to the facts of this case. Under 11 *Del. C.* § 1442, "[a] person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so . . . ." There is no dispute that Griffin's knife is a deadly weapon, that he was carrying it concealed, and that he

did not have a license to do so. Thus, unless his conduct was protected by the Delaware Constitution, Griffin's conviction must stand.

■ Article I, Section 20 of the Delaware Constitution provides that "[a] person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use." By its terms, Article I, Section 20 does not "entitle a person to conceal the weapon he carries."[1] In *Dickerson v. State*,[2] this Court considered whether the constitution implicitly guarantees the right to carry a concealed deadly weapon in one's home. The Court did not decide the issue, however, because Dickerson was carrying his concealed gun outside his home.

In several other jurisdictions, this issue is resolved by the terms of the CCDW statute or the state constitution. For example, in Pennsylvania the CCDW statute exempts anyone carrying a concealed firearm "in his place of abode or fixed place of business...."[3] By contrast, the Kentucky Constitution provides that the right to bear arms is "subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed deadly weapons."[4] Wisconsin is one of the states, like Delaware, where neither the constitution or the CCDW statute addresses whether it is a crime to carry a concealed weapon in one's home.

The Wisconsin Supreme Court decision in *State v. Hamdan*[5] is instructive. Hamdan was the owner of a store that sold groceries and liquor. He kept a gun under the counter near the cash register. Two plain clothes police officers, who went into the store to conduct a license check, learned that Hamdan kept a concealed gun. He was arrested and convicted of CCDW.

The Wisconsin court held that the CCDW statute[6] was unconstitutional as applied to Hamdan. The court recognized the state's "broad police power to regulate the ownership and use of firearms and other weapons," but it also noted the need to limit the applicability of the CCDW statute to "narrowly accommodate the constitutional right to keep and bear arms...."[7] The *Hamdan* court adopted a three part test to decide, on a case-by-case basis, whether the CCDW statute is unconstitutional as applied. First, the court must compare the strength of the state's interest in public safety with the individual's interest in carrying a concealed weapon. Second, if the individual interest outweighs the state interest, the court must determine, "whether an individual could have exercised the right in a reasonable, alternative manner that did not violate the statute."[8] Third, the individual must be carrying the concealed weapon for a lawful

---

1. *Smith v. State*, 2005 WL 2149410 at *3 (Del.Supr.).

2. 975 A.2d 791 (Del.2009).

3. 18 P.A.C.S.A. § 6106(a)(1)(2011).

4. Ky Const § 1.

5. 264 Wis.2d 433, 665 N.W.2d 785 (2003).

6. Wisconsin's CCDW statute makes it a crime for anyone who is not a peace officer to "[go] armed with a concealed and dangerous weapon." W.S.A. § 941.23.

7. *State v. Hamdan*, 665 N.W.2d at 798. The Wisconsin Constitution provides that, "people have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose." W.S.A. Const. Art. 1, § 25.

8. *State v. Hamdan*, 665 N.W.2d at 808.

purpose.[9]

Hamdan satisfied all three criteria. A person's interest in keeping a concealed weapon is strongest when the weapon is in one's home or business and is being used for security. The state's interest is weakest in those circumstances because the concealed weapon presents a relatively minimal threat to public safety. Thus, the balance weighed in favor of Hamdan's constitutional right. In addition, there was no reasonable alternative to concealing the weapon:

> Requiring a storeowner who desires security *on his own business property* to carry a gun openly or in a holster is simply not reasonable. Such practices would alert criminals to the presence of the weapon and frighten friends and customers.... [10]

Finally, Hamdan was carrying the weapon for a lawful purpose.

■ We agree with the Wisconsin court's analysis, and adopt the *Hamdan* test. The question is whether Griffin satisfies that test. As to the first prong, Griffin's interest is at least as strong as Hamdan's. He was in his home, using a knife to carry out the everyday household activity of opening a box. Griffin satisfies the second prong because it would be unreasonable to "restrict the manner in which one could carry a legal weapon from room to room within one's home...." [11] Griffin also satisfies the last prong. It is undisputed that he was using the knife to open boxes, and there is no suggestion he

attempted to use it as a weapon, even after he became belligerent and resisted arrest.

■ We conclude, therefore, that Griffin's constitutional right to bear arms authorized his carrying a concealed knife in his home. But that does not end the inquiry. When the police confronted Griffin at the top of the basement stairs, they asked whether he had a knife. At that point, the balance between his interest in carrying a concealed weapon in his home and the State's interest in public safety shifted in favor of the State. Griffin was no longer using the knife for household purposes, and his failure to reveal that he was carrying a weapon could have represented a serious threat to both the police and his girlfriend.

Griffin says he told the police that the knife was in his pant leg. The police say he told them the knife was in the basement. If the jury believes Griffin, he cannot be convicted for CCDW. He was entitled to be carrying the concealed knife in his home, and he revealed the knife's concealed location when asked by the police. Griffin was unable to remove the knife from his pant leg because he was handcuffed, and he did not voluntarily leave his home while carrying the weapon.[12] If, instead, the jury believes the police, then Griffin was subject to prosecution for CCDW. Although he may not have had an unlawful purpose for continuing to conceal the weapon, he no longer had a constitutionally protected right to do so.

At trial, the jury was not instructed to decide whether Griffin was given the op-

---

9. The Wisconsin Constitution expressly states that the right to keep and bear arms must be for a lawful purpose. The Delaware Constitution does not include that language, but that is a distinction without a difference, as it would be absurd to suggest that individuals have a constitutional right to carry a weapon for an unlawful purpose.

10. *State v. Hamdan*, 665 N.W.2d at 809 (Emphasis in original.).

11. *State v. Stevens*, 113 Or.App. 429, 833 P.2d 318, 319 (1992).

12. Cf. *Dickerson v. State, supra.*

portunity to disclose that he was carrying the knife, and, if so, whether he did so truthfully. Under the specific circumstances of this case, those factual findings will determine whether Griffin can be convicted of CCDW.

### Conclusion

Based on the foregoing, Griffin's conviction of carrying a concealed deadly weapon is REVERSED and this matter is REMANDED for a new trial on that charge alone. Jurisdiction is not retained.